## N. FLUEGELMAN & CO., Inc., v. FEDERAL TRADE COMMISSION.

Circuit Court of Appeals, Second Circuit.
January 6, 1930.

No. 85.

Henry Fluegelman, of New York City (David Klein, of New York City, of counsel), for petitioner.

Robert E. Healy, Chief Counsel, Federal Trade Comm., of Washington, D. C., and James M. Brinson, Sp. Atty., of Washington, D. C., for respondent.

Covington, Burling & Rublee, of Washington, D. C., and Hays, Hershfield, Kaufman & Schwabacher, of New York City (J. Harry Covington, of Washington, D. C., and Wolfgang S. Schwabacher, of New York City, of counsel), for Rayon Institute of America, Inc.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge. The order to cease and desist directs that "the respondent * * * cease and desist, directly or indirectly, from using the word 'Satinmaid,' or any word or words, or combination of words, embracing the word 'satin' as a trade name for, or to describe or designate a cotton fabric offered for sale or sold in interstate commerce."

The petitioner's business is that of converting cotton fabrics, silk and cotton fabrics, rayon fabrics, combinations of cotton and artificial silk fabrics, and selling them to wholesale and retail dealers in the several states of the United States. The product complained of here is a cotton fabric made in a satin weave, and has been advertised under the trade-name of "Satinmaid" and "Satinized," and has also been referred to on the labels and tags as a "satinized" fabric. The petitioner has a trade-mark of the name "Satinmaid" and "Satinized." In such advertising, since the 7th of December, 1925, the petitioner has used the word "Satinmaid," and in almost equally large type or letters has added "A cotton fabric." The same has been true in the use of the word "Satinized."

Prior to the addition of the words "a cotton fabric," in each instance, the Federal Trade Commission, after complaint made, entered into a stipulation on December 7, 1925, with the petitioner, in part, as follows:

"It is further stipulated and agreed that hereafter when respondent (referring to N. Fluegelman & Co.) shall use said trade name 'Satinmaid' in advertising, labeling or describing a fabric composed entirely of cotton or not containing a substantial amount of silk, it will, in every case, use in immediate conjunction with said trade name apt words clearly showing that such fabric is all cotton or contains no silk or the truth as to its silk content."

Prior to this stipulation, the Commission found that the product "when sold and delivered by respondent has had so-called board ends affixed to the cards or boards around which the fabric was wound, containing said trade name, accompanied by the words 'A Satinized Fabric,' in one or more places, which also have appeared on paste tickets, hanging tags, salesmen's color cards, and other descriptive matter used in connection with the sale and distribution of said fabric."

It found that, after December 7, 1925, the petitioner in its advertisements and descriptive matter used in connection with the sale and distribution of this fabric the words "A Cotton Fabric" either below or above the word "Satinmaid" and "Satinized," but in letters considerably smaller, except in the so-called color cards used by traveling salesmen to exhibit the various colors in which petitioner offers its fabric for sale. On these color cards the words "A Cotton Fabric" appear in letters larger but less conspicuous than the trade-name "Satinmaid" or "Satinized." The Commission found that the word "satin" described a fabric composed

wholly of silk, woven in a peculiar manner so as to impart a high luster to the surface of the fabric; that the word "Satinmaid," composed of two words "satin" and "maid," had the same phonetic significance as if it were used with the word "made," and has a capacity and tendency to mislead and deceive buyers into the belief that this cotton fabric consisted wholly or in part of silk, and thus induced purchasers to the same belief. Moreover, it found that in its selling the petitioner had paste tickets, hanging tags, board ends, and color cards bearing the name "Satinmaid," and thus misled the buyers into the belief that the fabrics consisted in whole or in part of silk.

There are many definitions in the different recognized dictionaries of the word "satin," but all substantially holding it to be a silk fabric made of a thick close texture and overshot woof having a glossy surface. Much expert testimony has been adduced as to the meaning of the word "satin," but substantially agreeing that it is used in one of two senses to describe any satin woven cloth. But if the word "satin" is not alone used and there be a qualifying phrase which is descriptive of the material, there can be no deception of the public. The fact that the petitioner has trade-marked the word "Satinmaid" and "Satinized" gave it no unlimited sanction to use it when it would deceive. Brougham et al. v. Blanton Mfg. Co., 249 U. S. 495, 39 S. Ct. 363, 63 L. Ed. 725; Federal Trade Comm. v. Kay, 35 F. (2d) 160 (decided Sept. 18, 1929, 7th C. C. A.).

The test of the unfair method of competition was not whether a trade-mark may have been registered, but whether the method of using it falls within the prohibition of the Federal Trade Commission Act (15 USCA §§ 41–51), which forbids unfair method of competition in commerce and declares it to be unlawful. Any misleading trade-marks and labels used in merchandising a product which misleads the purchasing public is forbidden. Fed. Trade Comm. v. Winsted Hosiery Co., 258 U. S. 483, 42 S. Ct. 384, 66 L. Ed. 729. But the evidence concededly shows that "satin," among other things, means the weave of the cloth, and therefore may be used with or without additional qualifying words to describe fabrics or cloths woven in the satin weave. Satin may also be used with qualifying words indicating the yarn in which the fabric described is woven, and such would not be misleading. Thus used, if the word "satin" makes reference to the weave as well as the yarn, and the petitioner makes known that the yarn of which the fabric is woven is not silk—yarn usually employed in manufacturing satin—there can be no deception on or misleading of the public. Where cotton yarn is used, reference should be clearly made that it is used. In December, 1925, the parties recognized this by their stipulation, and agreed upon a policy of sale, with a reference to the cotton fabric, as safe to the purchasing public. Silk manufacturers, who have a great interest to prevent the sale of materials as silk made when they are not, define satin as including a weave and a silk-faced fabric. The petitioner has a satin weave, and there can be no deception by the use of the word "Satinmaid" or "Satinized" if it is sufficiently made known that all of the material used is not silk. Thus the petitioner would describe its "Satinmaid" and "Satinized" as a cotton fabric with a satin weave, which, if thus truly made and truthfully displayed and offered to the purchasing public, will not be deceptive. An order which would forbid such merchandising prohibits that which is lawful, and the order to cease and desist entered upon such a basis cannot stand. Fed. Trade Comm. v. Curtis Pub. Co., 260 U. S. 568, 43 S. Ct. 210, 67 L. Ed. 408; Heuser v. Fed. Trade Comm. (C. C. A.) 4 F.(2d) 632. This court has the power, under the statute (U. S. Code, title 15, § 45 [15 USCA § 45]), to conform the order to the complaint and findings. Fed. Trade Comm. v. Balme (C. C. A.) 23 F.(2d) 315.

Accordingly, the order to cease and desist will be modified so as to require the petitioner to cease and desist, directly or indirectly, from using the words "Satinmaid" or "Satinized" or any word or words or combination of words embracing the word "satin" as a trade-name for or to describe or designate a cotton fabric offered for sale or sold in interstate commerce, unless there be added, in letters equally conspicuous and on the same side of the label, advertising matter, wrapper, stationery, or board ends on which the words "Satinmaid," or "Satinized" appear, the words "a cotton fabric," "a cotton satin," "no silk," or equivalent modifying terms.

As thus modified, the order is confirmed.